453 F.2d 1075
 Maria ALMENARES et al., Plaintiffs-Appellees,
v.
George K. WYMAN, Commissioner of Social Services for the
State of New York, individually and in his official
capacity, and Jule Sugarman, Commissioner of Social Services
for the City of New York, individually, in his official
capacity, and on behalf of all other local commissioners of
social services in the State of New York, individually and
in their official capacities, Defendants-Appellants.
 No. 383, Docket 71-2038.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 12, 1971.
Decided Dec. 10, 1971.
Certiorari Denied Feb. 22, 1972.
See 92 S.Ct. 962.
 
 Henry A. Freedman, New York City (Steven J. Cole, Center on Social Welfare Policy and Law, Lorenzo Casanova and Gerald McIntyre, Bronx Legal Services Corp. B, New York City, of counsel), for plaintiffs-appellees.
 Emilio P. Gautier, New York City, Louis B. York, Manhattan Legal Services Corp., John C. Gray, Jr. and Robert J. Jaffe, Brooklyn, N. Y., Brooklyn Legal Services Corp. B, of counsel), for intervenors.
 Stephen P. Seligman, Asst. Atty. Gen. (Samuel A. Hirshowitz, First Asst. Atty. Gen., and Louis J. Lefkowitz, Atty. Gen., State of N. Y., of counsel), for defendant-appellant Wyman.
 Yvette G. Harmon, New York City (J. Lee Rankin, Corp. Counsel, City of New York, of counsel), for defendant-appellant Sugarman.
 Before FRIENDLY, Chief Judge, FEINBERG, Circuit Judge, and DAVIS, Associate Judge.*
 FRIENDLY, Chief Judge:
 
 I.
 
 1
 This case begins where Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), ends. The Court there held that local social service agencies must provide welfare recipients an opportunity for a hearing affording basic due process rights before terminating benefits. Plaintiffs here allege that the hearing procedures actually employed by defendants with respect to review of local agency action terminating, suspending or reducing their Aid to Families with Dependent Children (AFDC) benefits failed to meet the due process requirements enunciated in Goldberg, and further that the procedures are in conflict with those prescribed by the United States Department of Health, Education and Welfare (HEW) subsequent to Goldberg, 45 C.F.R. Sec. 205.10, 36 Fed.Reg. 3034 (1971), implementing the "fair hearing" requirement of the Social Security Act, 42 U.S.C. Secs. 602(a) (4), and 1202(a) (4), through its rule making power, 42 U.S.C. Sec. 1302.
 
 
 2
 After the decision in Goldberg and for the purpose of complying with it, the New York State Department of Social Services modified its regulation governing hearing procedures by providing for a local agency hearing affording basic due process rights. 18 N.Y.C.R.R. Sec. 351.26.[1] Plaintiffs do not challenge the constitutionality of this regulation. The New York City Department of Social Services (City) also modified its announced procedures. At the time of the events here in question, the City's hearing procedures were set forth in Procedure No. (P.No.) 71-21, replaced by P.No. 71-35 (effective September 30, 1971)[2] which provided that "in cases where it is proposed that assistance be reduced, suspended or discontinued," and prior to such action, the affected recipient must be afforded an opportunity for a local agency hearing which, at least on the face of the Procedure, would seem to comport with the constitutional requirements enunciated by the Goldberg majority for cases of discontinuance.[3] In the event of adverse action the affected recipient is entitled to a post-reduction, suspension or discontinuance State "fair hearing" which affords due process procedural safeguards. See Goldberg v. Kelly, supra, 397 U.S. at 259-60, 90 S.Ct. 1011, 25 L.Ed.2d 287; see also N.Y. Social Welfare Law Sec. 353 (McKinney 1966); 18 N.Y.C.R.R. Secs. 84.2-84.23.
 
 
 3
 Even prior to the decision in Goldberg v. Kelly, supra, HEW had been reconsidering its regulation dealing with state "fair hearings" under the various "categorical assistance" programs to which the Federal Government contributes.[4] On February 13, 1971, HEW published new regulations effective April 14, 1971, 45 C.F.R. Sec. 205.10, 36 Fed.Reg. 3034 (1971). These directed that each State plan under the categorical assistance programs must contain provisions whereby, inter alia:
 
 
 4
 (1) Every claimant would be informed in writing at the time of his application for assistance and at the time of any action affecting his claim, of his right to a fair hearing and the method for obtaining one;
 
 
 5
 (2) An opportunity for a hearing before the State agency shall be granted to any individual requesting a hearing because his claim has been denied or not acted upon with reasonable promptness or "because he is aggrieved by any other agency action affecting receipt, suspension, reduction, or termination of such assistance or by agency policy as it affects his situation";
 
 
 6
 (3) Notice of proposed action must be given fifteen days in advance;
 
 
 7
 (4) Assistance must be continued "until the fair hearing decision is rendered and through a period consistent with the State's established policies for issuance of payments unless a determination is made by the State agency, in accordance with criteria issued by the Social and Rehabilitation Service, that the issue is one of State agency policy and not one of fact or judgment relating to the individual case, including a question whether the State agency rules or policies were correctly applied to the facts of the particular case."
 
 
 8
 Concededly the City and State of New York, have not complied with so much of the regulation as forbids discontinuance, suspension or reduction of benefits until after an adverse decision at the State fair hearing; they take such action once the City has acted, with the claimant entitled to review by the State agency but with his benefits affected in the meanwhile.[5]
 
 
 9
 The plaintiffs in this action are three women recipients of AFDC benefits. Maria Almenares received a letter from the City dated July 12, 1971, advising that on July 16, her semi-monthly grant of $120.50 would be reduced to $6.35 because of non-payment of rent, which she alleged she was withholding pursuant to N.Y. Real Property Action and Procedure Law, McKinney's Consol.Laws c. 81, Sec. 755, and receipt of support money from her husband, the extent of which she denied; allegedly no opportunity for a hearing, State or local, was offered. Cresencia Garcia received notice dated April 14, 1971, that her grant would be reduced as of May 16-in fact, she alleges that, without further notice, the reduction became effective on May 1-from $117 semi-monthly to $93.60 because of alleged endorsement of checks which she claimed she had not received. Local agency review was not had until July 9, after assistance had already been reduced; the decision was adverse but Mrs. Garcia claimed the hearing did not afford due process because the hearing examiner was not impartial and because she was denied the right to confront the evidence against her. Janet Rodriguez received notice early in July, 1971, that her semi-monthly grant of $117.30 would be suspended (later modified to a reduction to $27.45) because she had been working, a fact which she denied. No pre-termination or pre-reduction hearing, State or local, was afforded since, as the City now asserts, discontinuance or reduction was "mandated by law," see note 3, supra. Before decision of the motion for a preliminary injunction, eight other recipients of AFDC benefits were allowed to intervene. Allegedly four had suffered or were threatened with termination and four with substantial reductions of their grants. Six had been advised of their right to a City hearing and four had received this; the others claimed they had not been so advised. All those who had received hearings alleged that these did not comply with due process. Five of the eight allegedly had assistance reduced or terminated prior to any hearing.
 
 
 10
 The complaint was brought against George K. Wyman, Commissioner of Social Services of the State of New York, and Jule Sugarman, Commissioner of Social Services for the City.[6] Plaintiffs sought to represent all recipients of public assistance benefits under the federally aided AFDC and Aid to the Aged, Blind and Disabled (AABD) programs.[7] They contended that the actions of the City with respect to their AFDC benefits were in violation of due process, as explicated in Goldberg v. Kelly, supra, and also that termination or reduction of their benefits prior to decision in a State fair hearing violated the HEW regulations. On a motion for a preliminary injunction, the district court held, in an opinion filed November 3, 1971, that the complaint stated colorable constitutional claims over which it had jurisdiction pursuant to 28 U.S.C. Sec. 1343(3); that consequently it had "pendent" jurisdiction over the claim of violation of the HEW regulation, without need to consider jurisdictional amount; that the claim relating to violation of the HEW regulations might properly be prosecuted as a class action under F.R.Civ.P. 23(b) (2) for injunctive and declaratory relief against the two named defendants but not against other local administrators, see note 6, supra; and that the HEW regulations were valid. It entered an order which restrained defendants from terminating, suspending or reducing AFDC or AABD benefits "until an opportunity is afforded for a fair hearing comporting with the requirements of 45 C.F.R. Sec. 205.10, 36 Fed.Reg. 3034 (1971) insofar as it applies to the issues raised by the plaintiffs in this case, or until this Court determines that defendant Wyman or his successor in office has promulgated regulations implementing the federal regulation, insofar as it applies to the issues in this case, and that defendant Wyman or his successor has developed a suitable method to monitor local compliance with such regulation." The order also directed the defendants to resume full assistance to all recipients under the AFDC and AABD programs whose assistance had been reduced, suspended or terminated since April 14, 1971, and had requested a fair hearing from the New York State Department of Social Services but had not yet had a decision thereon.
 
 
 11
 On November 8, we heard a motion by defendant Wyman requesting a stay of the injunction pending appeal.[8] He represented that a change from local to state disposition at the first instance would create serious administrative difficulties and that the court's order would require restoration or prevent withdrawal of benefits in thousands of cases where termination or reduction had been or would be effected in full compliance with constitutional standards. We granted a stay, first pending expedited hearing of the appeal on November 12, and then pending decision, on condition that the plaintiffs and intervenors should continue to receive full benefits.
 
 II.
 
 12
 Like other cases in the welfare area, this one raises a congeries of jurisdictional issues, arising mainly from the fact that the jurisdictional amount requirement, 28 U.S.C. Sec. 1331(a), is inapplicable to claims under the Civil Rights Act but is to "general federal question" claims.
 
 
 13
 The first question is whether, assuming for the moment that the complaint stated a substantial constitutional claim, the "right or immunity" allegedly infringed is, in the language of Mr. Justice Stone in Hague v. C. I. O., 307 U.S. 496, 531, 59 S.Ct. 954, 83 L.Ed. 1423 (1939), which we followed in Eisen v. Eastman, 421 F.2d 560 (2 Cir. 1969), "one of personal liberty, not dependent for its existence upon the infringement of property rights," so as to come within the jurisdictional statute, 28 U.S.C. Sec. 1343(3), implementing the Civil Rights Act, 42 U.S.C. Sec. 1983. Judge Smith's opinion in Johnson v. Harder, 438 F.2d 7 (2 Cir. 1971), see also Campagnuolo v. Harder, 440 F.2d 1225 (2 Cir. 1971), opens up the problems with respect to the viability of Justice Stone's test in welfare cases arising from the Supreme Court's unexplicated assumption of Sec. 1343(3) jurisdiction not only in King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), the only such case which, at the time of the Eisen decision, appeared to create any difficulty, but in many subsequent ones. See e. g., Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Goldberg v. Kelly, supra; Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 49 (1970); Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970). While it is not hard to view total or substantial withdrawal of benefits from families living near the edge of subsistence as coming within Justice Stone's formulation, as we suggested in Eisen, see 421 F.2d at 564, and held in Johnson v. Harder, supra, that principle would not necessarily cover every adverse alteration of benefits, no matter how small in amount or limited in duration. We find it unnecessary here to work out the puzzle arising from the Court's unquestioning assumption of Sec. 1343(3) jurisdiction in all welfare cases that have come before it and its apparent continued adherence to the personal-property rights distinction in other suits alleging unconstitutional state action, see Abernathy v. Carpenter, 208 F.Supp. 793 (W.D.Mo.1962), aff'd per curiam, 373 U.S. 241, 83 S.Ct. 1295, 10 L.Ed.2d 409 (1963); Alterman Transportation Lines v. Public Service Comm'n, 259 F.Supp. 486 (M.D.Tenn.1966), aff'd per curiam, 386 U.S. 262, 87 S.Ct. 1023, 18 L.Ed.2d 39 (1967); and Hornbeak v. Hamm, 283 F.Supp. 549 (M.D.Ala.), aff'd per curiam, 393 U.S. 9, 89 S.Ct. 47, 21 L.Ed.2d 14 (1968). Cf. Harrison v. Brooks, 446 F.2d 404 (1 Cir. 1971). For some of the plaintiffs and intervenors did allege total or serious curtailments in benefits which had been fixed to provide the minimum needed for subsistence.
 
 
 14
 The second jurisdictional question is the one we assumed for purposes of deciding the first, to wit, whether the complaint asserted a substantial constitutional claim[9] so as to afford jurisdiction under 28 U.S.C. Sec. 1343(3) if other conditions were met. It is too clear for argument that a claim that a state or one of its municipalities had terminated AFDC benefits without the kind of hearing required by Goldberg would be substantial, even though their regulations had been revamped so that on their face they complied with that decision; the claim would be of unconstitutionality as applied. What is not so clear is that Goldberg requires a hearing in advance of action when benefits are simply reduced. The Chief Justice raised this question in a dissent joined by Mr. Justice Black, see Wheeler v. Montgomery, 397 U.S. 282, 284-85, 90 S.Ct. 1026, 25 L.Ed.2d 307 (1970). While the majority did not then answer the question, two months later the Court, in reversing and remanding a judgment which invalidated a reduction of benefits in advance of a Goldberg type hearing, recognized that the question might-or might notreceive a different answer. Daniel v. Goliday, 398 U.S. 73, 90 S.Ct. 1722, 26 L.Ed.2d 57 (1970). Whatever the ultimate answer may be, the constitutional question remains substantial, all that is here required. See Merriweather v. Burson, 439 F.2d 1092, 1093 (5 Cir. 1971). Moreover, as indicated above, at least some of the claims here at issue involve total or nearly total discontinuance.
 
 
 15
 We thus reach the question whether the district court properly held the statutory claim to be "pendent"[10] to the constitutional claim so as to be cognizable irrespective of the requirement of 28 U.S.C. Sec. 1331 concerning jurisdictional amount.[11] The state does not seriously question that the constitutional and statutory claims have the "common nucleus of law and fact" demanded by United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), or that, absent a jurisdictional barrier, a plaintiff having a constitutional claim of the sort here asserted would "ordinarily be expected" also to try his statutory claim "in one judicial proceeding." Id.
 
 
 16
 Its principal contention against pendency is rather that the constitutional claims lay only against Sugarman, the City Commissioner, because of the City's alleged violations of the State-approved procedures, and thus would not support a pendent statutory claim against Wyman, the State Commissioner. The district court answered this by concluding that under both state and federal statutes, N.Y. Social Services Law, McKinney's Consol.Laws, c. 55, Secs. 20(2) (b), (3) (a) and (3) (f), 34(3) (d) and (e), and 42 U.S.C. Sec. 602(a) (3) and Sec. 1382(a) (3), the State Commissioner is responsible for the conduct and procedures of local officials. While this may well be so, we need not base decision on that ground. For as we have recently held, the doctrine of pendent jurisdiction is sufficiently broad to support a claim within the limits of Gibbs against a person not a party to the primary, jurisdiction-granting claim. See Astor-Honor, Inc. v. Grosset & Dunlap, Inc., 441 F.2d 627 (2 Cir. 1971); Leather's Best, Inc. v. S.S. Mormaclynx, 451 F.2d 800 (2 Cir. 1971), at 809.
 
 
 17
 Given this, there is no doubt that the record plaintiffs and intervenors should have been allowed to litigate their own statutory claims against the named defendants irrespective of judisdictional amount. However, a further problem here arises from the ruling permitting plaintiffs to maintain the statutory claim as a class action. In contrast to Rosado v. Wyman, supra, where both the constitutional and statutory claims were allowed to be maintained as class actions, and apparently the class of plaintiffs on both issues was coextensive, here, as we read the district court's opinion, it granted such status only to the statutory claims, which it held to meet squarely the criterion of F.R.Civ.P. 23(b) (2), namely, that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby, making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Whether or not the constitutional claims were appropriate for class action treatment, an issue we need not decide,11a the Gibbs test for pendency, requiring a "common nucleus of operative facts," is satisfied since plaintiffs and all members of their class share one essential thing in common-their benefits have been or will be terminated, reduced or suspended prior to a State hearing unless relief is afforded.
 
 
 18
 The effect of permitting the "pendent" statutory claim to proceed as a class action is, however, to adjudicate the claims of some persons, who, in the absence of an affirmative holding on the point concerning jurisdictional amount noted on fn. 11, supra, could not themselves have invoked the jurisdiction of the federal courts. Whether, in light of this, the district court should have permitted the plaintiffs to maintain their statutory claim as a class action "involves two discrete inquiries: whether the court has the 'power' to hear the [pendent] claim; and whether, assuming the power, the court should, as a matter of 'discretion,' hear the [pendent] claim." Leather's Best, Inc. v. S.S. Mormaclynx, supra, 451 F.2d at 809.
 
 
 19
 The question of the court's power revolves around two bodies of law: on the one hand, there are the traditional statutory jurisdictional requirements;[12] on the other, there are the expanding principles of ancillary and pendent jurisdiction. To be sure, before an action can be brought in the federal courts, the requirements of some jurisdictional statute must be met. Here the named plaintiffs satisfied this under 28 U.S.C. Sec. 1343(3). This is sufficient to vest the court with subject-matter jurisdiction not merely over their primary claim, but also over their own pendent claims-all those arising from the "common nucleus of operative facts"-whether against the defendant to the primary claim or another. We see no valid distinction in the power of the court to join additional plaintiffs.[13] Neither do we perceive any inherent limitation that makes Rule 23 per se inapplicable to a pendent claim so long as the claim meets the Gibbs test of a "common nucleus of operative facts" with the primary claim as well as those of Rule 23 itself. F.R.Civ.P. 23(c) (4) provides that "When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues . .," here the validity of the HEW regulation and the consequent invalidity of the New York procedures. Though no cases have been found permitting a class action to be maintained solely on a pendent claim where the primary claim had not been allowed to be so maintained, nothing in the language of the rule forbids this. Those decisions imposing jurisdictional requirements on members of the designated class all involve interpretations of some jurisdictional statute and not the rule itself.[14] Without doubt, a court must be alert to possibilities of abuse, such as when the parties to the primary claim do not appear to be the real parties in interest on the pendent claim, or their interest is inconsequential in comparison to the interests of the class. Pendent jurisdiction cannot be invoked merely to circumvent established jurisdictional requirements. Cf. Sheldon v. Sill, 49 U.S. (8 How.) 440, 12 L.Ed. 1147 (1850). But we find no evidence of such a situation here. Barring such evidence, we consider those decisions imposing jurisdictional requirements on class members to be inapposite and independent jurisdiction over the pendent claim unnecessary.
 
 
 20
 Having held that the district court had the power to permit plaintiffs to proceed on behalf of their class for declaratory and injunctive relief on their pendent claim, we now turn to the question of discretion. We note at the outset that the pendent claim here, like that in Rosado v. Wyman, supra, is a federal and not a state claim. At least some of the policies found relevant in Gibbs, against unnecessary decisions of state law and avoiding cases where state issues predominate, "whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought," 383 U.S. at 726, 86 S.Ct. at 1139, 16 L.Ed.2d 218, are thus not operative. The pendent claim here is one which should rightly be heard in a federal forum since it involves the interpretation of a federal statute and the validity of nationally applicable federal regulations, and concerns a welfare program relying heavily on federal funds. Under the circumstances of this case, determination that plaintiffs are entitled to relief on their pendent claim concerning the invalidity of existing procedures would mean that all other members of the class should receive identical treatment without further inquiry; indeed, it is not too much to expect that the defendants would accord this voluntarily. Unless this were to be done, more suits for similar relief would be commenced; nothing could be more wasteful of judicial time.[15]
 
 
 21
 Our holding here is thus severely limited. With respect to a class action under F.R.Civ.P. 23(b) (3), where damages or some other relief requiring examination of collateral facts is required, it could well be an abuse of a trial court's discretion to utilize the principle of pendent jurisdiction to include class claims not otherwise assertable in a federal court, even though they arise from the same nucleus of operative facts as the primary claim.15a This would certainly be true where each class member's claim is small, and the factual issues surrounding it are complex. See Snyder v. Harris, supra, 394 U.S. at 339-40, 89 S.Ct. 1053, 22 L.Ed.2d 319 (Congressional policy, at least in cases raising questions of state law, is to remit cases involving lesser amounts to the state courts).
 
 
 22
 The State argues also that the due process claims cannot afford a basis for pendent jurisdiction against either defendant since plaintiffs had not exhausted their state remedies. So far as concerns administrative remedies, namely, State fair hearings, see Eisen v. Eastman, supra, 421 F.2d at 567-69, it suffices to say that these could not have remedied the very evil of which plaintiffs complain, namely, termination and reduction of benefits before a proper hearing. It is doubtful that the City's actions could be made the subject of judicial proceedings under Article 78 of the New York Civil Practice Law and Rules until review by the State; in any event, a plaintiff asserting a constitutional claim normally is not required to exhaust similar state judicial remedies before resorting to the federal courts. Bacon v. Rutland R. R., 232 U.S. 134, 34 S.Ct. 283, 58 L.Ed. 538 (1914). The State fares no better on its argument with respect to abstention. To be sure, if plaintiff's allegations are correct, the state courts presumably would hold the City's actions to be invalid under its own regulations and federal constitutional decision could thus be avoided. Cf. Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); Askew v. Hargrave, 401 U.S. 476, 91 S.Ct. 856, 28 Ed.2d 196 (1971). But a decision to abstain from deciding the due process claims pending such proceedings relating to issues of state law would not mean that the federal court lacked jurisdiction of the constitutional claims. Cf. Rosado v. Wyman, supra, 397 U.S. at 407, 90 S.Ct. 1207, 25 L.Ed.2d 442. Furthermore, in the context of this case, the presence of the pendent statutory claim fulfills a principal purpose of abstention by making it unnecessary to decide the constitutional claim.
 
 
 23
 A final point, not pressed by the State, which we must nevertheless consider is whether the case was one requiring the convening of a three-judge court under 28 U.S.C. Sec. 2281. Plaintiffs, rather untypically, not only did not request this but sought to avoid it, claiming that they "do not seek to enjoin as unconstitutional a state-wide statute or regulation." Cf. Ex parte Collins, 277 U.S. 565, 48 S.Ct. 585, 72 L.Ed. 990 (1928). Presumably what they meant was that their due process attack was not upon such a statute or regulation but rather on the application of a New York City regulation. While their statutory attack was upon a state regulation permitting the reduction or discontinuance of assistance after a Goldberg-type hearing by a local agency, that did not require a three-judge court under Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965).
 
 III.
 
 24
 The State advances three contentions relating to the merits of the decision on the pendent claim, although the first two of these also have a distinct jurisdictional flavor.
 
 
 25
 The first is that the district court should not have passed upon New York's failure to comply with the HEW regulations until HEW had conducted a conformity hearing pursuant to 42 U.S.C. Sec. 1316.[16] A similar contention was rejected in Rosado v. Wyman, supra, 397 U.S. at 405-07, 90 S.Ct. 1207, 25 L.Ed.2d 442. The State argues that the statement in Rosado that "HEW has no procedures whereby welfare recipients may trigger and participate in the Department's review of state welfare programs" (italics supplied) is no longer correct with respect to the italicized phrase in light of National Welfare Rights Organization v. Finch, 429 F.2d 725 (D.C. Cir. 1970), and HEW's new regulation permitting such participation, 45 C.F.R. Sec. 213.15 (1971). However, the important point is the inability of welfare recipients to trigger such a proceeding, along with the natural reluctance of HEW to embark on a course that could lead to withdrawal of federal aid. 42 U.S.C. Sec. 604.[17]
 
 
 26
 The State's next point is that the judge should have awaited decision in the action brought by Wyman in the Northern District of New York to have the HEW regulations declared invalid insofar as they require hearings by a State agency before benefits can be adversely affected. We readily agree that it would have been improper for the district court to have held the regulations invalid without affording HEW an opportunity to defend them, and even that it would have been advisable to request HEW to submit a brief. But it does not follow that the district court may not reject a challenge to the validity of HEW's regulation without HEW's being a party, at least in a situation like this where the challenger concedes the question to be solely one of law.
 
 
 27
 When we come at long last to the State's attack upon the validity of the HEW regulation, we join the district judge in finding it unimpressive. The State's general position is that HEW has no legitimate concern with the distribution of functions between the State and its subdivisions in the administration of federally assisted programs so long as the right results are achieved.[18] More specifically, the State cites 42 U.S.C. Sec. 602(a) which provides that "A State plan for aid and services to needy families with children must . . . (3) either provide for the establishment or designation of a single State agency to administer the plan, or provide for the establishment or designation of a single State agency to supervise the administration of the plan," and claims that the requirement for a State hearing before any adverse action deprives the State of the benefit of the latter option. But it is surely consistent with Sec. 602(a) (3) for HEW, under the broad rule-making authority accorded by 42 U.S.C. Sec. 1302, to determine that State supervision must include the conduct of hearings prior to adverse action. This is especially so in light of Sec. 602(a) (4) which requires a State plan to "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for aid to families with dependent children is denied or is not acted upon with reasonable promptness." It was competent for HEW to determine that the objectives of the federally assisted programs could be better attained by a single state hearing prior to the taking of action rather than having such a hearing conducted by a subdivision of the state subject to review in a state hearing after action had been taken.[19]
 
 IV.
 
 28
 The sole remaining issue is whether the State should be accorded some further time to bring itself into compliance with the HEW regulation.
 
 
 29
 Although the application here was for a preliminary injunction, there seems to be nothing preliminary about the order that was issued.[20] There was no suggestion that the parties return to the court with further evidence or argument which might lead to modification of the injunction. Doubtless this was because the district judge, properly in our view, regarded the issue of the validity of the HEW regulation and the consequent invalidity of the State procedure as being solely one of law which he had determined not simply preliminarily but finally. Cf. F.R.Civ.P. 65(a) (2). What remained was to see that the named plaintiffs received their due.
 
 
 30
 We do not condone the State's conduct when, after having been given 60 days to follow the HEW regulations of February 13, 1971, it neither brought itself into compliance nor initiated any proceedings to contest the validity of the regulations until this action prodded it into doing so. On the other hand, we cannot blind ourselves to the fact that some time will be required to transfer the large apparatus of local hearing machinery to what has been a rather small State system, and that immediate enforcement of the injunction would thus require payment of millions of much needed dollars to recipients whose benefits have been terminated or reduced after proceedings that fully met the constitutional standards prescribed in Goldberg v. Kelly, primarily because the hearing was had before what is the wrong tribunal under the new HEW regulations. This seems to us to run counter to the teaching of Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 592, 88 L.Ed. 754 (1944), that "The historic injunctive process was designed to deter, not to punish." Although the State must bring itself into compliance with the federal regulations, and soon, a proper balancing of the interests calls for postponing the date of the injunction for a reasonable time, on condition that constitutionally valid procedures be followed in the interval.
 
 
 31
 We therefore affirm the order of the district court but stay its effectiveness until a date 60 days after the filing of this opinion and such further period, if any, as the district court, in its discretion to be exercised upon motion,[21] may allow. During that period the defendants shall be subject to an injunction in the form attached as Appendix A. The injunction issued by the district court is correspondingly modified so that the date in the second paragraph of the injunction shall be the date when the injunction becomes effective rather than April 14, 1971. Nothing herein shall be deemed to affect adversely the rights of any person to the ultimate restitution, in this action or elsewhere, of benefits of which he has been unconstitutionally deprived. Plaintiffs may recover their costs. It is so ordered.
 
 APPENDIX A
 
 32
 It is hereby ordered that George K. Wyman, Commissioner of Social Services for the State of New York, his successors in office, agents and employees, including local social services officials administering AFDC and AABD programs, insofar as said officials have actual notice of this order, and Jule Sugarman, Commissioner of Social Services for the City of New York, his successors in office, agents and employees, are
 
 
 33
 (1) Restrained from terminating, suspending or reducing public assistance benefits in the federally-aided programs of Aid to Families with Dependent Children and Aid to the Aged, Blind and Disabled, unless and until an opportunity is afforded for a local social services agency hearing comporting with the requirements of 18 N.Y.C.R.R. Sec. 351.26 and Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), it being understood that such a hearing must be accorded when a recipient contends that a State law, rule or policy has been incorrectly applied to the facts of the particular case;
 
 
 34
 (2) Directed to resume full assistance for all recipients under the AFDC and AABD programs who have had their assistance reduced, suspended or terminated by a local social services agency since April 14, 1971 and have requested a fair hearing from the New York State Department of Social Services and have not yet received a decision from such hearing, but only where such adverse action by the local social services agency was taken without written notice of intent to take such action informing said recipients of the right to a hearing comporting with the requirements of 18 N.Y.C.R.R. Sec. 351.26 or where said recipients have requested such a hearing and none has been provided (including cases where a recipient contends that a state law, rule or policy has been incorrectly applied to the facts of the particular case); and
 
 
 35
 (3) Directed to resume full assistance for all recipients under the AFDC and AABD programs who have had their assistance reduced, suspended or terminated since April 14, 1971, and who have requested a State fair hearing after an adverse ruling following a local social services hearing and have not had a decision from said State fair hearing within the time limits set forth in 18 N.Y.C.R.R. Part 84, pending the decision in said State fair hearing.
 
 
 
 *
 Of the United States Court of Claims, sitting by designation
 
 
 [1]
 Since the district court in Kelly v. Wyman, 294 F.Supp. 893 (S.D.N.Y.1968), aff'd sub nom. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), upheld the constitutionality of one option of the New York State procedure, 18 N.Y.C.R.R. Sec. 351.26(a) (1968), providing for local social service pretermination agency hearings which, the district court concluded, met the minimum requirements of due process, the State simply repealed the optional procedure used by New York City which the courts had struck down, 18 N.Y.C.R.R. Sec. 351.16(b) (1968). At the same time, the State made minor modifications in the valid option to saisfy earlier HEW complaints
 
 
 [2]
 The record is silent on the City's procedure between March 23, 1970, the date of the Court's decision in Goldberg, and April 26, 1971, the effective date of P.No. 71-21. P.No. 71-35 which replaces P.No. 71-21 leaves the details of the local hearings unchanged. One notable difference between them can be found in the "Purpose" sections. P.No. 71-21, after announcing that the procedure is designed to protect clients' rights, states that it "in no way limits client's right to request a [State] Fair Hearing, in accordance with existing policy and requires that assistance be continued until completion of the administrative review." This could certainly be read as requiring continuation of benefits until the completion of a State fair hearing. Clearly, the City has not so interpreted it, and such an interpretation would be in conflict with existing State regulations. The "Purpose" section of P.No. 71-35, possibly with this difficulty in mind, makes clear that benefits are affected after an adverse decision by the City's reviewing officer
 
 
 [3]
 This statement of conformity with Goldberg is subject to one important qualification. The Procedure did not require notification to the client where "Discontinuance of assistance or reduction of client's budget is mandated by law." Many of the difficulties that have arisen apparently stem from the Department's seeking to avail itself of this exception in cases where there was a dispute whether on the facts the legal mandate had been triggered-a situation obviously within the reach of Goldberg when discontinuance is proposed
 The City procedures provide for seven days advance notice, a period held constitutionally sufficient in Goldberg, 397 U.S. at 268, 90 S.Ct. 1011, 25 L.Ed.2d 287.
 
 
 [4]
 At the time of the Goldberg decision the "fair hearing" requirement of the Social Security Act, 42 U.S.C. Sec. 602(a) (4), as implemented by HEW regulations then in effect, was satisfied by a post-termination hearing. 397 U.S. at 275, n. 3, 90 S.Ct. 1011, 25 L.Ed.2d 287. Prior to the Court's decision (and as noted therein, id.) HEW proposed a regulation, largely embodying the due process requirements enunciated in Goldberg, requiring a state "fair hearing" prior to termination, reduction or suspension of benefits. 45 C.F.R. Sec. 205.10, 34 Fed.Reg. 1144 (1969). That regulation was scheduled to take effect in July 1970; it was revoked, however, before taking effect when a new regulation was published for comment in May 1970. 45 C.F.R. Sec. 205.10, 35 Fed.Reg. 8448 (1970). After several months of study by HEW, and extensive comments by "interested organizations, agencies, and individuals," the new regulation was published
 
 
 [5]
 After the bringing of this action by AFDC recipients in the Southern District of New York, the New York State Commissioner of Social Services brought an action in the Northern District seeking a declaration that the HEW regulation was unauthorized insofar as it required review by a state rather than a local agency before benefits under a categorical assistance program could be adversely affected
 
 
 [6]
 The complaint alleged that Sugarman was also sued "on behalf of all other local commissioners of social services in the State of New York."
 
 
 [7]
 Although plaintiffs and intervenors receive only AFDC benefits, and not AABD benefits, the district court found plaintiffs representative of recipients in the latter program as well. Since HEW's hearing regulation, 45 C.F.R. Sec. 205.10, 36 Fed.Reg. 3034 (1971), applies equally to both federally-aided programs, it was within the district court's discretion to permit plaintiffs to represent both groups so long as the requirements of F.R.Civ.P. 23 were otherwise met
 
 
 [8]
 Defendant Sugarman also appealed but filed no brief and took no position concerning the stay
 
 
 [9]
 We regard this as essential for jurisdiction under Sec. 1343(3) in the circumstances here presented, since in our view the Social Security Act is not an "Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States." Cf. Rachel v. Georgia, 384 U.S. 780, 792, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966); City of Greenwood v. Peacock, 384 U.S. 808, 825, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966)
 Plaintiffs' reliance on 28 U.S.C. Sec. 1343(4) is foreclosed so far as this circuit is concerned. McCall v. Shapiro, 416 F.2d 246 (2 Cir. 1969). Their invocation of 28 U.S.C. Sec. 1337 is even more patently without merit since the Social Security Act is not an act "regulating commerce or protecting trade and commerce against restraints and monopolies." And the ritual incantation of the Declaratory Judgment Act, 28 U.S.C. Sec. 2201, as a basis for jurisdiction, so often encountered in welfare and other cases, comes at least twenty years too late. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).
 
 
 [10]
 We use the quotation marks because there is a certain anomaly in applying this word to a federal claim. However, the usage has the highest sanction. See Rosado v. Wyman, 397 U.S. 397, 405, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970)
 
 
 [11]
 In view of our holding on this point we are not required to determine whether the claims of plaintiffs and other members of their class concerning the invalidity of the New York procedures in light of the HEW regulation constitute "a single title or right in which they have a common and undivided interest," Snyder v. Harris, 394 U.S. 332, 335, 89 S.Ct. 1053, 1056, 22 L.Ed.2d 319 (1969), so as to permit aggregation
 11a It could be strongly argued that class action treatment was allowable, particularly for all welfare recipients aggrieved by the City's Procedure referred to in fn. 3. On the other hand, the class for this or any other constitutional claim would have had to be limited to New York City welfare recipients, since the papers did not allege Goldberg violations elsewhere in the State, whereas the class designated on the statutory claim was state-wide. Consequently, even if the district court were thought to have granted class action status to the constitutional claims, and to have done so with propriety, we would be left with a problem not dissimilar to that hereafter considered.
 
 
 [12]
 Clearly, as a constitutional matter, the court has the power to permit this. While the pendent claim here is federal, and thus within one of the constitutional heads of jurisdiction, the same result would follow even if the pendent claim presented a question of state law and diversity of citizenship was absent. Chief Justice Marshall in Osborn v. Bank of the United States, 22 U.S. (9 Wheat) 738, 821-22, 6 L.Ed. 204 (1824), interpreted the constitutional scope of a "case" as including all questions, state or federal. See United Mine Workers v. Gibbs, supra. The presence of additional parties over whom federal jurisdiction would not otherwise exist does not change this. See, e. g., Phelps v. Oaks, 117 U.S. 236, 6 S.Ct. 714, 29 L.Ed. 888 (1886); Dery v. Wyer, 265 F.2d 804 (2 Cir. 1959); Walmac Co. v. Isaacs, 220 F.2d 108 (1 Cir. 1955)
 
 
 [13]
 See Wilson v. American Chain & Cable Co., 364 F.2d 558 (3 Cir. 1966); Newman v. Freeman, 262 F.Supp. 106 (E.D.Pa.1966)
 
 
 [14]
 In Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), the Court, in two cases brought as class actions pursuant to F.R.Civ.P. 23(b) (3), reaffirmed the traditional test permitting aggregation of claims only when the right asserted is "common and undivided." The Court made clear that it was interpreting the amount in controversy language of 28 U.S.C. Sec. 1332 (and by implication Sec. 1331), a threshold requirement for invoking subject-matter jurisdiction, and thus is not controlling here where subject-matter jurisdiction exists under 28 U.S.C. Sec. 1343(3). However, Mr. Justice Black's opinion for the Court, relied upon Clark v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939), a case in which it is not clear whether joinder or a class action was involved. In following the rule for aggregation later reaffirmed in Snyder, the Court in Clark also held that each plaintiff must satisfy the jurisdictional amount requirement, even though at least one plaintiff satisfied it and thus subject-matter jurisdiction had attached. While Snyder v. Harris, supra, does not speak directly to this point, a number of courts have concluded that each member of the class, rather than just the record plaintiffs, must satisfy the amount in controversy requirement in a situation where aggregation is not allowable. But these cases involve interpretations of the jurisdictional statutes and not of Rule 23. See Alvarez v. Pan American Life Ins. Co., 375 F.2d 992, 996-97 (5 Cir.), cert. denied, 389 U.S. 827, 88 S.Ct. 74, 19 L.Ed.2d 82 (1967); Zahn v. Int'l Paper Co., 53 F.R.D. 430 (D.Vt.1971), leave to appeal granted. We express no view on this subject since in the instant case, no independent basis for jurisdiction over the class action was required. Compare 3B Moore, Federal Practice p 23.95 at 23-1851-52 with Wright, Federal Courts 312 (1970)
 
 
 [15]
 While no factual issue would exist on the merits of the statutory claim, the courts would be forced to sort out insubstantial due process claims to determine whether jurisdiction was properly invoked under Sec. 1343(3), even though the merits of these constitutional claims would never be decided
 15a We do not read the district court's order as giving class action status to so much of the complaint as sought damages for the class as distinguished from restitution of benefits unlawfully withheld. See Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 564-65 (2 Cir. 1968); Advisory Committee's Note, Proposed Rules of Civil Procedure, 39 F.R.D. 98, 107 (1965).
 
 
 [16]
 A determination by HEW adverse to the State after such a hearing would be reviewable by this court at the State's request, 42 U.S.C. Sec. 1316(a) (3)
 
 
 [17]
 The suggestion in Rosado, 397 U.S. at 406-07, 90 S.Ct. 1207, 1215, 25 L.Ed.2d 442, that district courts obtain the views of HEW whenever possible was limited to cases where HEW "has not set forth its views, either in a regulation or published opinion." Here it has done the former
 
 
 [18]
 Even if we were to accept this position, it would not carry the day, since the HEW regulations contain substantive provisions differing from the City regulations, e. g., requiring 15 rather than 7 days advance notice
 
 
 [19]
 An HEW memorandum, dated February 13, 1971, set forth the rationale of the single-hearing requirement, as follows:
 
 
 [1]
 Holding one hearing, rather than a local hearing followed by a State hearing, will, in our view, be less costly in time and money
 
 
 [2]
 Greater impartiality, objectivity and uniformity in the application of State policies is assured when the hearing is not before the agency that made the decision being appealed
 
 
 [3]
 The individual and those appearing on his behalf will be subject to only one hearing
 
 
 [4]
 This hearing process is closely akin to that which would be required under the Family Assistance Plan
 
 
 [5]
 The State agency should be better able to interpret State policies and to determine whether they were correctly applied to the individual's situation, especially when the claimant challenges the correctness of the local agency's application of those policies
 
 
 [6]
 A single hearing can be a means for improving hearing procedures and for shortening the time for the total process which, in some States, now exceeds the Federal standard of 60 days
 
 
 [20]
 The State's motion for a stay referred to the decree as a "preliminary permanent injunction." While this is a new animal to us, the description is not inapt
 
 
 [21]
 Notice of any such motion shall be given to HEW as well as to counsel for the plaintiffs and intervenors