Enrique VELAZCO, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

Steven A. MINTER, Commissioner of the Department of Public Welfare, Defendant.

Civ. A. No. 72–3129–W

United States District Court, D. Massachusetts.

Jan. 9, 1973.

---

R. Peter Anderson, Mass. Law Reform, Boston Mass., and Paula Gold, Boston Legal Assistance, Dorchester, Mass., for plaintiffs.

Kenneth A. Behar, Asst. Atty. Gen., Boston, Mass., for defendant.

## AMENDED OPINION

WYZANSKI, Senior District Judge.

The named plaintiff is a typical recipient of both Old Age Assistance grants [hereafter called "OAA grants"] and Old Age, Survivors and Disability Insurance benefits [hereafter called "OAS-DI benefits"]. He is 71 years old, married, and with three children living with him. Before September 1972 he was receiving monthly an OAA grant of about $92, and a $155.30 OASDI benefit. His wife and children were receiving monthly $50 from welfare payments of the Commonwealth of Massachusetts and $137.70 from Social Security payments of the Federal Social Security program through the Department of Health, Education and Welfare.

Defendant is the Commissioner of Public Welfare of the Commonwealth of Massachusetts. He has general authority with respect to the administration of the Commonwealth's welfare program, including its cooperation with the federal OAA program.

September 29, 1972 defendant mailed to plaintiff, and October 1, 1972 plaintiff received from defendant, the following printed notice:

> The Social Security check which you will receive on October 3, 1972 will include a 20% increase in benefits. Under Massachusetts law, this increase must be considered in arriving at the amount of your Old Age Assistance grant from this department.

> Chapter 788 of the Acts of 1972 gives this Department authorization to disregard the first $7.50 of any income you may now be receiving and to increase the amount allowed for travel allowance by $5.00 monthly. In addition, there is a 3% cost of living increase in the amount allowed as a basic budget. In any event, *you will have more money available for your own use after October 15, 1972 than you did in September 1972.* [Emphasis added]

As a result of all these changes, the assistance check you will receive on October 15, 1972 may be increased, decreased or your grant may be terminated.

If you are dissatisfied with the amount of your check of October 15,

1972 you may call your Social Worker for a more detailed explanation. If your grant is decreased or terminated, you also have the right to appeal this reduction or termination, and blanks for this purpose will be supplied by your Welfare Office upon your request. If you wish to appeal for a hearing or review, you must file your request no later than December 14, 1972.

> Massachusetts Department of Public Welfare
> Steven A. Minter, Commissioner

October 11, 1972 plaintiff filed a complaint on behalf of himself and all persons who, he alleged, will have their OAA grants reduced or terminated as of October 15, 1972 without receiving proper notice or being given an opportunity for a hearing prior to termination or reduction. He and his class of welfare recipients sought to enjoin defendant's proposed reduction or termination of their OAA grants on the grounds that defendant had failed to give them proper notice and an opportunity to be heard prior to taking the proposed action contrary, as it is alleged, to regulations promulgated under the Social Security Act, to the laws of the Commonwealth of Massachusetts, and to the due process clause of the Fourteenth Amendment.

This court has jurisdiction of this controversy. 28 U.S.C. § 1343(3). Almenares v. Wyman, 453 F.2d 1075, 1081–1082 (2 Cir. 1971).

October 16, 1972, by order, this court, pursuant to F.R.Civ.P. 23(b)(3), determined that this action could be maintained by plaintiff as a class action on behalf of himself and all other OAA recipients who received the notice dated September 29, 1972 from the Department of Public Welfare in regard to Social Security increases and whose checks have been or will be reduced or terminated subsequent to said notification without further notification or opportunity for hearing. By express terms and by implication, the order was thus limit-ed to those who received a particular notice dated September 29, 1972 and were OAA recipients from the Massachusetts DPW. Cf. footnote 11a in Almenares v. Wyman, *supra*, at pp. 1083–1084.

The background of this controversy lies in several cognate provisions of the Federal Social Security Act, as amended. 42 U.S.C. § 1381 et seq. Of these the first are the provisions with respect to OASDI benefits. By amendments, effective September 1, 1972, to the Social Security Act, Title II, Public Law 92–336, 86 Stat. 406, the national government increased by 20% the benefits payable under the OASDI program. The second set of relevant provisions related to a cooperative federal-state program of OAA grants, for which funds came partly from federal and partly from state resources.

With respect to the second or OAA provisions, the Department of Health, Education and Welfare, which administers the Federal Social Security program, had adopted regulations, effective April 14, 1971. 45 C.F.R. § 205.10, 36 Fed.Reg. 3034 (1971). These directed that each state plan under the OAA plan must contain provisions which in effect forbid discontinuance, suspension or reduction of OAA grants until *after* an adverse decision by the State at a fair hearing conducted by it. See Almenares v. Wyman, *supra*, at pp. 1079–1080. The text summarized in *Almenares*, reads as follows:

### TITLE 45—PUBLIC WELFARE

Chapter II—Social and Rehabilitation Service (Assistance Programs), Department of Health, Education, and Welfare

### PART 205—GENERAL ADMINISTRATION—PUBLIC ASSISTANCE PROGRAMS
#### Fair Hearings

Notice of proposed rule making for the programs administered under titles I, IV–A, X, XIV, XVI, and XIX of the Social Security Act, relating to fair hearings in public assistance programs, was published in the FEDERAL REGISTER

on May 29, 1970 (35 F.R. 8448). After consideration of the views presented by interested organizations, agencies, and individuals, the following changes were made:

1. Section 205.10(a)(5) now requires that the State agency shall determine whether the issue is one of fact or judgment or of State agency policy; that assistance will continue until such determination is made, and—where the issue is one of fact or judgment—until a fair hearing decision is reached. It incorporates the substance of the proposed § 206.11 (which has been omitted) and requires a minimum advance period of 15 days rather than 7 days. It clarifies the State's option of continuing assistance regardless of the nature of the issue, and even if the request for a hearing is made after expiration of the advance notice period.

2. Section 205.10(a)(3)(v) is changed to provide that any claimant scheduled for a group hearing may withdraw and be given an individual hearing instead.

3. Clarifying changes are also made in § 205.10(a)(3), first paragraph (opportunity for a fair hearing regarding suspension of assistance), § 205.10(a)(9) (medical assessment from a source satisfactory to a claimant) and § 205.10(a)(10)(i) (opportunity to examine hearing evidence in advance).

4. The requirement for provision of legal services contained in §§ 205.10 and 220.25 was separately revoked (see 35 F.R. 10591, June 30, 1970).

Accordingly, § 205.10, Part 205, Chapter II, Title 45 of the Code of Federal Regulations is revised to read as follows:

§ 205.10  Fair hearings.

(a) *State plan requirements.* A State plan under title I, IV–A, X, XIV, XVI or XIX of the Social Security Act must provide for a system of fair hearings under which:

(1) The single State agency responsible for the program will be responsible for fulfillment of fair hearings provisions.

(2) Every claimant will be informed in writing at the time of application and at the time of any action affecting his claim:

(i) Of his right to fair hearing;

(ii) Of the method by which he may obtain a hearing;

(iii) That he may be represented by legal counsel, or by a relative, friend, or other spokesman, or he may represent himself; and

(iv) Of any provision for payment of legal fees by the agency.

(3) An opportunity for a fair hearing before the State agency will be granted to any individual requesting a hearing because his claim for financial or medical assistance is denied, or is not acted upon with reasonable promptness, or because he is aggrieved by any other agency action affecting receipt, suspension, reduction, or termination of such assistance or by agency policy as it affects his situation. Under this requirement:

(i) A request for a hearing is defined as any clear expression (oral or written) by the claimant (or person acting for him, such as his legal representative, relative, or friend) to the effect that he wants the opportunity to present his case to higher authority.

(ii) The freedom to make such a request must not be limited or interfered with in any way, and agency emphasis must be on helping the claimant to submit and process his request, and in preparing his case, if needed.

(iii) The claimant must be provided reasonable time in which to appeal an agency action.

(iv) The fair hearing shall include consideration of:

(a) Any agency action, or failure to act with reasonable promptness, on a claim for financial or medical assistance, which includes undue delay in reaching a decision on eligibility or in making a payment, refusal to consider a request for or undue delay in making an adjustment in payment, and suspension or discontinuance of such assistance in whole or in part;

(*b*) The agency's interpretation of the law, and the reasonableness and equitableness of the policies promulgated under the law, if the claimant is aggrieved by their application to his situation;

(*c*) Agency decision regarding:

(*1*) Eligibility for financial or medical assistance in both initial and subsequent determinations,

(*2*) Amount of financial or medical assistance or change in payments,

(*3*) The manner or form of payment, including restricted or protective payments, even though no Federal financial participation is claimed, and

(*4*) Conditions of payment, including work requirements.

(v) States may respond to a series of individual requests for fair hearings by conducting a single group hearing. States may only consolidate cases in which the sole issue involved is one of an agency policy. In such a situation, each individual must be given the right to withdraw from the group hearing in favor of an individual hearing. If recipients request a group hearing on such an issue the State must grant it. In all group hearings, whether initiated by the State or by the claimants, the policies governing fair hearings must be followed. Thus, each individual claimant must be permitted to present his own case and be represented by his own lawyer.

(vi) The agency shall not deny or dismiss a request for a hearing except where it has been withdrawn by claimant in writing, or abandoned.

(4) Hearing procedures will be issued and publicized by the State agency for the guidance of all concerned.

(5) In cases of any proposed action to terminate, suspend or reduce assistance:

(i) The State or local agency will give timely and adequate advance notice detailing the reasons for the proposed action. Under this requirement:

(*a*) "Timely" means that the notice is mailed at least 15 days before the action is to be taken.

(*b*) "Adequate advance notice" means a written notice that includes details of reasons for the proposed agency action, explanation of the individual's right to conference, his right to request a fair hearing and the circumstances under which assistance is continued if a fair hearing is requested.

(ii) If, within the advance notice period, the individual responds by indicating his wish for an agency conference, an opportunity is provided for the recipient (or his representative) to discuss his situation with agency staff, obtain an explanation of the reasons for the proposed action, and present information to show that the proposed action is incorrect. Under this requirement:

(*a*) During this conference, the recipient is given the opportunity to speak for himself or be represented by legal counsel or by a friend or other spokesman.

(*b*) The opportunity for a conference does not in any way diminish the recipient's right to a fair hearing.

(iii) (*a*) In cases in which there is a request for a fair hearing within the advance notice period:

(*1*) Assistance is continued until the fair hearing decision is rendered and through a period consistent with the State's established policies for issuance of payments unless a determination is made by the State agency, in accordance with criteria issued by the Social and Rehabilitation Service, that the issue is one of State agency policy and not one of fact or judgment relating to the individual case, including a question of whether the State agency rules or policies were correctly applied to the facts of the particular case.

(*2*) The agency promptly informs the claimant in writing if assistance will be discontinued, based on the State agency's determination.

(*b*) Alternatively, the State may provide for continuing assistance in all cases.

In cases in which a fair hearing is requested after expiration of the advance

notice period, the State may provide for an additional period during which time the request for a hearing will result in reinstatement of assistance to be continued until the fair hearing decision.

(6) Information and referral services are provided to help claimants make use of any legal services available in the community that can provide legal representation at the hearing.

(7) The hearing will be conducted at a time, date and place convenient to the claimant, and adequate preliminary written notice will be given.

(8) The hearings will be conducted by an impartial official (or officials) of the State agency. Under this requirement, the hearing official must not have been involved in any way with the action in question.

(9) When the hearing involves medical issues such as those concerning a diagnosis, or an examining physician's report, or the medical review team's decision, a medical assessment other than that of the person or persons involved in making the original decision will be obtained at agency expense from a source satisfactory to the claimant and made part of the record if the hearing officer or the appellant considers it necessary.

(10) The claimant, or his representative, will have adequate opportunity:

(i) To examine all documents and records used at the hearing at a reasonable time before the date of the hearing as well as during the hearing;

(ii) At his option, to present his case himself or with the aid of others including legal counsel;

(iii) To bring witnesses;

(iv) To establish all pertinent facts and circumstances;

(v) To advance any arguments without undue interference;

(vi) To question or refute any testimony or evidence, including opportunity to confront and cross-examine adverse witnesses.

(11) Prompt, definitive, and final administrative action will be taken within 60 days from the date of the request for a fair hearing, except where the claimant requests a delay in the hearing.

(12) The claimant will be notified of the decision, in writing, in the name of the State agency and, to the extent it is available to him, of his right to judicial review.

(13) When the hearing decision is favorable to the claimant, or when the agency decides in favor of the claimant prior to the hearing the agency will make corrective payments retroactively to the date the incorrect action was taken or such earlier date as is provided under State policy.

(14) Recommendations of the hearing officer or panel shall be based exclusively on evidence and other material introduced at the hearing. The verbatim transcript of testimony and exhibits, or an official report containing the substance of what transpired at the hearing, together with all papers and requests filed in the proceeding, and the recommendations of the hearing officer or panel will constitute the exclusive record for decision by the hearing authority and will be available to the claimant at a place accessible to him or his representative at any reasonable time.

Agreeably to the HEW regulations, the Massachusetts DPW adopted January 1, 1971, and amended October 11, 1972, its Massachusetts Public Assistance Policy Manual, Rev. 1/71 Chapter II, procedures for the "Determination of Initial and Continuing Eligibility Section A", which reads as follows:

Chapter II DETERMINATION OF INITIAL AND CONTINUING ELIGIBILITY

Section A Page 12

c. *Redetermination of Eligibility in Special Situations*

In any category of assistance when a WSO obtains information which indicates that a change in the individual's circumstances may affect the amount of assistance to which he is entitled or

may make him ineligible, such eligibility must be reconsidered promptly within 30 days.

d. *Advance Notice of Reduction or Termination of Assistance*

The recipient must be given at least fifteen (SL245C) days advance notice of questions (e. g., hearsay evidence) the WSO has about an individual's eligibility and the social worker is to offer the recipient the opportunity to discuss his situation before sending formal written notice of reduction in payment or termination of assistance. Regional Offices must see that this policy is followed in the Welfare Service Office. The following procedures must be followed:

(1) All questions of suspension or closing must be reviewed and approved by someone in a supervisory position.

(2) When the decision of such person is to close or suspend, a written notice must be sent to the client notifying the individual of this decision. The reason for the closing or suspension must be clearly spelled out in the notice. The notice must also provide that the individual may personally appear at Welfare Service Office within the next 15 days and review the matter with an impartial member of the social service staff. The notice must give the individual a specific appointment within the time limit and also provide for a change in the appointment within the time limit if the originally scheduled time is inconvenient for the individual. The notice must further provide that the individual may be accompanied by another person or an attorney (at the expense of the individual), and that he may introduce evidence, and, in appropriate cases where veracity or testimony is in dispute, cross-examine. When the individual appears at the Welfare Service Office, he shall have explained to him the reasons for the decision and shall be informed of the evidence upon which they are based. The decision of the reviewing official shall be based solely on the information before him.

(3) Following the review with the individual, there must be a second written notice to the individual informing him of the decision. If the original decision is to be rescinded, the individual must be so notified in writing within three days of the review. If the decision is to uphold the suspension or closing, the individual must be so notified in writing and fair hearing procedures explained, also within three days of the review. Assistance may not be suspended or closed until this second written notice is sent to the individual.

If the individual does not respond to the original notice, the decision to close or suspend will be implemented immediately following the fifteen day period.

Against this background of statutes, regulations, and procedural manuals, plaintiffs in this class action complain that they will be denied their rights under regulations, statutes, and the due process clause if they receive after September 1972 monthly OAA grants which are less than they previously had been receiving, without having been given first, a notice of the detailed basis on which the reduction or termination will have been calculated, and second, an opportunity to be heard thereon.

In large measure, plaintiffs' argument takes off from Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) which held that local social service agencies must provide welfare recipients an opportunity for a hearing affording basic due process rights before terminating benefits. Reference is made to cases such as Almenares v. Wyman, *supra*, Almenares v. Lavine (S.D. N.Y., 71 Civ. 3503, Oct. 10, 1972); Serritella v. Engelman, 339 F.Supp. 738 (D.N.J., 1972); and Wheeler v. Montgomery, unreported (N.D.Cal.No.48303 1971). But see Provost v. Betit, 326 F. Supp. 920 (D.Vt.,1971), Merriweather v. Burson, 325 F.Supp. 709 (N.D.Ga., 1970) aff'd in part, 439 F.2d 1092 (5th Cir.,

1971), Rochester v. Ingram, 337 F.Supp. 350 (D.Del., 1972).

Plaintiffs point to the fact that in the cases cited, receipts from social welfare programs had been reduced or terminated by official action. However, the instant case differs in that, if we consider the total amount received by any one of the plaintiffs in the case at bar from both OAA grants and OASDI benefits in combination, he has not suffered, and is not threatened with, any discrimination, but, on the contrary, he has an increase in his individual receipts. He personally is better off. It is not just a case where some are better, and others worse off. Cf. Provost v. Betit, *supra.*

■ Perhaps if one were to read quite literally the April 14, 1971 HEW regulations and the 1971 DPW manual, both of which have already been quoted, it could be said that they make the test not whether the recipient gets less as a total but whether his receipt in the form of an OAA grant is reduced. However, this literalism overlooks what this court regards as the dominant substantive and procedural reality: that the various provisions and programs of the Social Security Act and of the interrelated Massachusetts provisions and programs are *in pari materia.* Old age benefits under the OASDI program and old age assistance grants under the OAA program are, both in legislative intent and in individual reaction, all parts of one package, though differently bundled. When in this case the bundles are undone, the sums available to each of plaintiffs in this case from the combination of his social security benefit and his old age grant is larger than it had been. His fortune is increased, not diminished or destroyed.

Another line of reasoning tends in the same direction. Before September 1972 each plaintiff was informed that if his income increased, his old age grant would be decreased. Defendant's September 29, 1972 notice informed each plaintiff that his income had been increased by a 20% increase in his Social Security OASDI benefits. Massachu-

setts without further ado could have deducted that full increment from the OAA grant it was paying him. There would have been no point in a detailed notice or hearing unless one is to suppose that such simple mathematics was beyond comprehension by a welfare recipient or beyond capacity for accurate computation by the DPW. Theoretically, of course, either of those suppositions *might* prove true. But the dangers are less obvious and less likely than the necessary losses which the public would suffer if the scheme had to be delayed until notices of hearings and indeed actual hearings could be held upon each specific computation. Many individuals would be the losers because of the postponement—for it is not clear that any of them would be entitled to get compensation for the delay if the scheme were postponed. On the other hand, it may be more plausible to suppose—though it is not now necessary or appropriate to decide it—that if any of these plaintiffs does receive an OAA grant which he believes has been improperly calculated, he has a right not merely, as he has already been promised, to a hearing, but also to be made whole with respect to any underpayment.

It also deserves attention that Massachusetts has generously chosen not to cut any plaintiff's OAA grant by the full amount of the increase of his OASDI benefit, but, on the contrary, as the September 29, 1972 notice clearly states, disregarded the first $7.50 of any income he may now be receiving, increased the amount of travel allowance by $5.00 monthly, and increased by 3% the amount allowed as a basic budget. Perhaps the formula, though generous, is not easily understood in detail and may also be wrongly computed; but, if so, there may well be, as the last paragraph indicates, appropriate avenues of correction after the OAA grant check is received.

■ In the light of the foregoing reasoning, the court finds it unnecessary to rule upon other matters threshed at the bar: such as, whether Goldberg v.

Kelly applies when the purported reduction of a welfare payment has been made not on an individual basis but because there is a general slash in the amounts payable to a class of beneficiaries—see Rochester v. Ingram, *supra*; or whether because the several plaintiffs may be on the threshold of poverty they are entitled to special Constitutional consideration; or whether the practical difficulties in extending the Goldberg v. Kelly doctrine to a situation involving thousands of persons simultaneously precludes an extension of that case's rationale. It is sufficient to hold that when the total bundle of OAA and OASDI payments to an individual is increased neither the Constitution nor any of the statutes nor regulations nor manuals cited requires that the governing authorities give him *in advance* a detailed or other notice or a hearing of any kind. Since Jerome of the Fourth Century, it has been proverbial that it does not behoove one to look a gift horse in the mouth. See Bartlett, *Familiar Quotations* (12th ed. 1951), pp. 13, 142, 1140, 1157 citing John Heywood, Samuel Butler, Francois Rabelais, and Miguel de Cervantes as well as Jerome.

Complaint dismissed on the merits; without costs.