**William NELSON et al., Plaintiffs,**

v.

**Jule R. SUGARMAN, Individually and as Commissioner of the New York City Department of Social Services, et al., Defendants.**

No. 71 Civ. 1719.

United States District Court,
S. D. New York.

Nov. 15, 1972.

Community Action for Legal Services, Inc. by Richard J. Hiller, David Rudenstine, Constance McDougal, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., of the State of New York by Mark T. Walsh and Benton J. Levy, Asst. Attys. Gen., New York City, Norman Redlich, Corp. Counsel, City of New York by Victor Muskin, New York City, for defendants.

*Findings of Fact and Conclusions of Law*

MOTLEY, District Judge.

■ The plaintiffs in this action are all recipients of public assistance from the State of New York under federally-funded programs, The complaint, as amended on May 24, 1971, charges defendants Sugarman and the New York City Department of Social Services with violating the mandate of Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), in their refusal to abide by and in their attempts to review *ex parte* certain "fair hearing" decisions of the New York State Department of Social Services involving the proposed termination, reduction, or suspension of welfare benefits.[1] Nine of the plaintiffs alleged that these defendants failed to comply with such fair hearing decisions which were favorable to the plaintiffs and, thereby, deprived them of their due process rights. This claim is similar, if not identical, to the claim presented in the case of Almenares v. Wyman, 453 F.2d 1075 (2d Cir. 1971), cert. denied, 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972), which held such a claim to be cognizable under 28 U.S.C. § 1343(3), the jurisdictional statute implementing the Civil Rights Act, 42 U.S.C. § 1983. In light of the decision in *Almenares* and 42 C.F.R. § 205.10(a)(5)[2] and their apparent effect on New York welfare procedures in cases involving the termination, reduction and suspension of benefits, the claim is now moot.[3]

The other allegations in the complaint charge all of the defendants with failing to comply with the regulation of the United States Department of Health, Education and Welfare (HEW) which prescribes fair hearing procedures to be

---

1. A fair hearing in conformity with *Goldberg* is required by the Social Security Act, 42 U.S.C. §§ 602(a)(4) and 1202(a)(4), and the United States Department of Health, Education and Welfare regulation contained in 45 C.F.R. § 205.10, which was issued pursuant to its rule-making power, 42 U.S.C. § 1302.

2. This regulation, which was published by HEW in February, 1971 and became effective on April 14, 1971, provides as follows:

   § 205.10 Fair hearings.
   (a) *State plan requirements.*
   A State plan under title I, IV–A, X, XIV, XVI or XIX of the Social Security Act must provide for a system of fair hearings under which:
   * . * * * *
   (5) In cases of any proposed action to terminate, suspend or reduce assistance:
   (i) The State or local agency will give timely and adequate advance notice detailing the reasons for the proposed action. Under this requirement:
   (a) "Timely" means that the notice is mailed at least 15 days before the action is to be taken.

* * * * *

(iii) (a) In cases in which there is a request for a fair hearing within the advance notice period:
   (1) Assistance is continued until the fair hearing decision is rendered and through a period consistent with the State's established policies for issuance of payments unless a determination is made by the State agency, in accordance with criteria issued by the Social and Rehabilitation Service, that the issue is one of State agency policy and not one of fact or judgment relating to the individual case, including a question of whether the State agency rules or policies were correctly applied to the facts of the particular case.
New York has incorporated this rule in its own regulations, effective July 18, 1972. *See* N.Y.C.R.R. § 358.8.

3. Mr. Hiller, attorney for plaintiffs: "The plaintiffs concede that the State is now rendering decisions within 60 days in those cases covered by Almenares v. Wyman . . . of proposed reduction, termination, suspension or discontinuance." Trial Transcript, September 12, 1972, at 4.

followed by state welfare agencies, 45 C.F.R. § 205.10, 36 Fed.Reg. 3034 (1971). Eight of the plaintiffs alleged that defendants failed to implement in timely fashion fair hearing decisions which had upheld their right to increased benefits.[4] Another plaintiff, Mrs. Sexton, who was an applicant for public assistance, claimed that she waited almost six months after a fair hearing examiner had determined that she was eligible for assistance before she received any benefits. The specific provision of the HEW regulations which these plaintiffs claim has been violated by the defendants is 45 C.F.R. § 205.10 (a)(11) which provides:

§ 205.10 Fair hearings.

(a) *State plan requirements.* A State plan under title I, IV–A, X, XIV, XVI or XIX of the Social Security Act must provide for a system of fair hearings under which:

\*   \*   \*   \*   \*   \*

(11) Prompt, definitive, and final administrative action will be taken within 60 days from the date of the request for a fair hearing, except where the claimant requests a delay in the hearing.

■ In their complaint, all the named plaintiffs alleged that they represented "members of a class, . . . who are all recipients of public assistance in the City and State of New York [and who] have received or will receive a favorable 'fair hearing' decision from [State] Commissioner Wyman with

which City Commissioner Sugarman and the [City] Department have refused or will refuse to comply or with which Commissioner Sugarman and the City Department have complied or will comply only after an inordinate and unreasonable delay." [Para. 4] In addition, the complaint represented that plaintiffs were bringing this action "on behalf of themselves and all others similarly situated." [Para. 9] By order dated December 17, 1971, this court granted plaintiffs' motion to prosecute their claims as a class action under Fed.R. Civ.P. 23(b)(2) for injunctive relief against the defendants.[5] The *Almenares* decision is authority for class action treatment in the circumstances presented here. *See* 453 F.2d at 1083–1086.

A trial of this action was held in December, 1971 and January, 1972. Subsequently, representations by the defendants of extensive changes in state and local welfare procedures were considered at a hearing on June 29, 1972 and the trial was reopened on September 12, 1972 to receive evidence of compliance by the state with the HEW regulations, in particular, the 60-day rule set forth above.

■ At the outset, the court is faced with the challenge by defendants to its jurisdiction over this action. It is clear that the *Almenares*-type claim would confer jurisdiction in this court and that the ancillary claims would clearly fall within this court's pendent jurisdiction if the *Almenares* issue were still unresolved. *See* 453 F.2d at 1083–1084;

---

4. In addition, the complaint demanded that the court "[a]ward actual damages in the amount of $5000 and punitive damages in the amount of $10,000 to each of the plaintiffs in this action." Complaint, at para. E. This claim has been abandoned. See Order of the court, dated December 14, 1971, at 4.

5. Although the plaintiffs named in the complaint only receive either Aid to Families with Dependent Children (AFDC) benefits or Aid to the Disabled (AD) benefits, the plaintiffs properly represent all welfare applicants and recipients in all of the six federally-funded programs to

which 45 C.F.R. § 205.10(a), *supra*, specifically refers, namely, Old Age Assistance (OAA), 42 U.S.C. § 301 et seq., Aid to the Blind (AB), 42 U.S.C. § 1201 et seq., Aid to the Aged, Blind, or Disabled (AABD), 42 U.S.C. § 1381 et seq., and Medical Assistance, 42 U.S.C. § 1396 et seq., in addition to the AFDC and AD programs. *See Alemenares,* 453 F.2d at 1080 n. 7. The home relief program, N.Y. Social Welfare Law § 157 et seq. (McKinney's Consol.Laws, c. 55, Book 52–A, 1966), from which plaintiff Nelson received benefits, is not federally funded and is therefore not covered by the HEW regulations.

Serritella v. Engelman, 339 F.Supp. 738, 747 (D.N.J.1972) and cases cited therein. Consequently, the mootness of the *Almenares* issue does not deprive this court of its pendent jurisdiction over the statutory claims, for "mootness [is] a factor affecting its discretion, not its power" and "the extent of the investment of judicial energy and the character of the claim[s]" warrant assertion of jurisdiction in this case.[6] *See* Rosado v. Wyman, 397 U.S. 397, 403–405, 90 S.Ct. 1207, 1213–1214, 25 L.Ed.2d 442 (1970).

■ Furthermore, the claim that defendants are failing to implement, within a reasonable time, fair hearing decisions on the eligibility of new applicants for public assistance itself presents a colorable cause of action under 42 U.S.C. § 1983. The failure to provide assistance to such applicants, who have been found to have insufficient means of support, is certainly as serious as the "total or substantial withdrawal of benefits from families living near the edge of subsistence."[7] *See Almenares, supra,* 453 F.2d at 1082. And, as in *Almenares,* the claim of the welfare applicant and members of her class is of "unconstitutionality [of the regulations] as applied." *Id.* Thus, this claim also comes within 28 U.S.C. § 1343 (3) and supports jurisdiction of the related, "pendent" [8] statutory claims.

■ Indeed, under the broad Supreme Court holding in Lynch v. Household Finance Corporation, 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), which expressly rejected the "personal rights"—"property rights" analysis undertaken in *Almenares,* this court has § 1343(3) jurisdiction over all of the claims alleging a failure of the defendants to implement fair hearing decisions within a reasonable time. Those claims present a colorable issue of denial of the due process safeguards mandated in Goldberg v. Kelly, *supra,* and, therefore, state a cause of action under 42 U.S.C. § 1983.

Proceeding to the merits of this action, the court must determine whether the defendants are in compliance with the 60-day prompt-action requirement of 45 C.F.R. § 205.10(a)(11) in three categories of cases. The categories are as follows:

1. A claimant's initial application for assistance is denied and he or she requests a fair hearing;

2. A welfare recipient's application for increased benefits or for an additional payment is denied and the recipient requests a fair hearing; or

3. A recipient's assistance is reduced, discontinued, or suspended and the recipient requests a fair hearing, but not within "the advance notice period."

---

6. The *Almenares*-type claim did not become entirely moot until the state changed its procedures subsequent to denial of *certiorari* in that case by the Supreme Court on February 22, 1972 (405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815). The plaintiffs did not concede mootness of the claim until September 12, 1972. *See* note 3 *supra.*

7. *Compare* Goldberg v. Kelly, 397 U.S. 254, 262–264, 90 S.Ct. 1011, 1017–1018, 25 L.Ed.2d 287 (1970):

"[Welfare] benefits are a matter of statutory entitlement for persons qualified to receive them. Their termination involves state action that adjudicates important rights.

. . . [W]hen welfare is discontinued, only a pre-termination evidentiary hearing provides the recipient with procedural due process. [Citation omit-

ted]. For qualified recipients, welfare provides the means to obtain essential food, clothing, housing, and medical care. [Citation omitted.] Thus the crucial factor in this context . . . is that termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits. Since he lacks independent resources, his situation becomes immediately desperate. His need to concentrate upon finding the means for daily subsistence, in turn, adversely affects his ability to seek redress from the welfare bureaucracy."

(Emphasis in the original. Footnotes omitted.)

8. *See Almenares, supra,* 453 F.2d at 1083 n. 10.

In each of these situations, both the HEW and New York State regulations afford the claimant or recipient the right to a fair hearing. *See* 45 C.F.R. § 205.10(a)(3); 18 N.Y.C.R.R. § 358.-4(a)(1), (3) and (4). The request for a fair hearing must be made "within 60 days after the action or failure to act complained of." 18 N.Y.C.R.R. § 358.-5(a). *See* 45 C.F.R. § 205.10(a)(3)(iii). When the hearing decision is favorable to the claimant or recipient, corrective payments are made retroactively to the date the incorrect action was taken. 45 C.F.R. § 205.10(a)(13); 18 N.Y.C.R.R. § 358.20.

■ Plaintiffs claim that fair hearing decisions are not rendered within 60 days of the request for a hearing in many cases in the categories set forth above and that when they are timely issued, the Departments of Social Services of the city and state do not implement the decisions within 60 days of the date of request. Plaintiffs contend that the failure to act within that 60-day period violates HEW's prompt-action regulation, 45 C.F.R. § 205.10(a)(11), reproduced *supra*. All defendants respond that this regulation "is directory and not mandatory" and that, in any event, it "requires only that fair hearing decisions be rendered within 60 days of date of request; the state is not obliged to implement the decisions within 60 days." Post-Trial Memorandum of state defendants, dated March 7, 1972, at 25, 29.

The simple answer to the contentions of the defendants is contained in the *amicus* brief of the United States submitted to this court. In that brief, HEW states that:

"... it has always been the Department's position that the words ['final administrative action' utilized in 45 C.F.R. § 205.10(a)(11)] refer to the mailing of the check or increased check, or notification of denial of assistance or increased assistance, as the case may be."

Memorandum of United States of America as Amicus Curiae 2. *See id.* at 4–5. The brief concluded: "The regulation in 45 C.F.R. § 205.10(a)(11) *requires* that a fair hearing decision be reached *and* implemented within the 60-day period prescribed therein." *Id.* at 17. [Emphasis supplied to "requires"; emphasis on "and" in the original.] The court holds that the regulation is within the rulemaking power of HEW under 42 U.S.C. § 1302, that it is consistent with the policies of the Social Security Act and the mandate of Goldberg v. Kelly, *supra*, and that it is properly interpreted as a mandatory prescription requiring actual compliance by the state and city departments with fair hearing decisions within 60 days of the date of request for such a hearing.[9] *Cf. Almenares, supra*, 453 F.2d at 1087–1088; Jeffries v. Swank, 337 F.Supp. 1062, 1067 (N.D. Ill.1971).

It should be noted that the present regulations of the State Department of Social Services conform substantially with the HEW prompt-action requirement:

18 N.Y.C.R.R. § 358.18: "Decision after hearing. (a) The fair hearing

---

9. HEW points out in its *amicus* brief, at 3, that the basic purpose of 45 C.F.R. § 205.10(a)(11) is to assure "that an individual who is applying for assistance or for an increased amount of assistance must receive his entitlement promptly." It is clear that the retroactive-payment requirement in that regulation, *see* p. 1136 *supra*, does not ameliorate the desperate situation of a claimant who has insufficient means of support while he is awaiting final administrative action on his claim. The 60-day rule is precisely designed to minimize the period of delay and, as HEW points out, an interpretation of that rule which only requires a hearing decision within 60 days would leave its "implementation open to bureaucratic delays of uncertain duration." *Amicus* brief, at 3. Furthermore, "it should be emphasized that the basic requirement in section 205.10(a)(11) is for 'prompt' action on a hearing request. Under this requirement the outer limit of 60 days cannot be interpreted to permit a 60-day delay to become normal procedure." *Id.*

decision . . . shall be issued as promptly as feasible and within 60 days from the date the request for a fair hearing is received by the department. However, such time may be extended when the appellant requests a delay in his hearing. The decision shall . . . when appropriate, direct specific action by the social services official. The decision shall be binding upon the social services officials.

\* \* \* \* \* \*

§ 358.22. Compliance with decision. When a decision of the commissioner (whether made after or without a hearing) directs a social services official to perform specific actions, such official shall comply promptly with such directions and make a report thereof to the department within 30 days after receipt of the decision."

It is apparent that, if the department simply complies with its own regulations, it should ordinarily meet the federal 60-day rule. Only in cases where a fair hearing decision is rendered at the very end of the 60-day period following a hearing request will prompt compliance by the appropriate state or city official exceed the 60-day "final administrative action" requirement of 45 C.F.R. § 205.10(a)(11).

Consequently, it would be a relatively simple matter for the department to bring itself in full conformity with the federal regulation, assuming that the department is actually complying with its own regulations. One alternative might be to shorten the period in which fair hearing decisions must be rendered in order to guarantee that prompt compliance by local social services officials with the decision will occur within 60 days of the request for the hearing. That is to say, an amendment of 18 N.Y.C.R.R. § 358.18 to require issuance of fair hearing decisions within 40 days, rather than 60 days, from the date of the request, might better insure adherence to the federal regulation. Such a change in the department's policy might well be coupled with a specification in § 358.22, *supra*, that the local social services official must, in all cases, comply with the directions of the hearing officer within 10 days after receipt of the decision. Neither of these proposed modifications in the present procedure of the department would increase the duties of or demands on departmental officials in any substantial way.

Of course, whether or not the present state regulations need revision and what modifications would be preferable are matters for the department, not for this court, to determine. The court has made the foregoing observations in order to indicate that the demands of the plaintiffs in this action are little different from the demands imposed upon the city and state social services departments by the state's own regulations. There is no challenge here to the validity of the regulations. Rather plaintiffs charge that defendants are presently violating these regulations and, in the process, are violating the HEW 60-day rule as well. The questions for the court are 1) whether the defendants have failed to comply with 45 C.F.R. § 205.10 and are still failing to comply and 2) if that is the case, whether injunctive relief is appropriate and what form such relief should take.

Over the past year, the state department has made substantial efforts to increase its capability for promptly adjudicating fair hearing requests. The fair hearing section of the department has increased its staff, streamlined its procedures, and expedited the handling of hearing requests. These improvements are reflected in the following statistics: [10]

10. The data in Tables 1 and 2 are contained in a chart furnished by the state which was stipulated to by the parties at the September 12, 1972 hearing in this court to represent the testimony of Carmen Shang, Assistant Commissioner of the New York State Department of Social Services. Hearing Transcript 13–14. *See also id.* at 25–30. (Testimony of Mr. Shang.)

TABLE 1

## IMPROVEMENTS IN FAIR HEARING PROCESS IN 1972

| MONTH | No. of Hearing Officers | No. of Supervising Examiners | Clerical Staff Devoted to Processing Fair Hearing Applications | Fair Hearings Held |
|---|---|---|---|---|
| JAN. | 12 | 0 | 19 | 417 |
| FEB. | 14 | 0 | 19 | 582 |
| MAR. | 15 | 2 | 19 | 780 |
| APR. | 17 | 2 | 19 | 630 |
| MAY | 18 | 2 | 24 | 979 |
| JUNE | 23 | 2 | 33 | 1200 |
| JULY | 23 | 2 | 42 | 1051 |
| AUG. | 25 | 2 | 47 | 2017 |
| SEPT. | 27 | 4 | 49 | 1325 |

However, despite these efforts, the state department has still been unable to keep pace with the number of fair hearing requests received by it. While the backlog of requests to be decided has been reduced during the year, a significant number of hearing decisions have not been rendered within 60 days of the date of request, as shown in the following table: [11]

TABLE 2      HEARING DECISIONS IN 1972

| MONTH | No. of Fair Hearing Requests | Decisions Rendered | Decisions Exceeding 60 Days To Render | % of Cases Exceeding 60 Days |
|---|---|---|---|---|
| JAN. | 1215 | 432 | 171 | 39.6 |
| FEB. | 1500 | 450 | 166 | 36.1 |
| MAR. | 1900 | 621 | 435 | 30 |
| APR. | 1900 | 686 | 282 | 41.1 |
| MAY | 3600 | 696 | 139 | 20 |
| JUNE | 5000 | 870 | 160 | 18.4 |
| JULY | 4300 | 675 | 160 | 17.8 |
| AUG. | 4200 | 900 | 187 | 20.8 |
| SEPT. | 3817 | 1120 | Unavailable | Unavailable |

Perhaps the primary cause of the state department's difficulties has been the enormous rise in fair hearing requests since 1970. In the first six

11. *See* note 10 *supra.*

months of 1972, the department received four times as many requests for a fair hearing as it had received in the comparable period of 1970.[12] As a consequence, although the department rendered over 2500 more hearing decisions and disposed of over 7000 more hearing requests in January-June, 1972 than in the same months of 1970, on May 31, 1972, there were over 3000 hearing requests pending decision as compared to only 1700 on June 30, 1970. A comparison of the January-June, 1970 period with the January-May, 1972 period[13] is shown in the following table:

TABLE 3  FAIR HEARING STATISTICS
1970 and 1972 COMPARISON[14]

| PERIOD | Hearing Requests Received | Requests Disposed Of | Disposition By Hearing | Pending at the End of Period |
|---|---|---|---|---|
| JAN.–JUNE 1970 | 3800 | 3600 | 1200 | 1700 |
| JAN.–MAY 1972 | 10,179 | 10,900 | 2885 | 3032 |

However, between January 1, 1972 and April 30, 1972 the department managed to reduce the number of pending requests from 3572 to 2139, although due to a doubling of requests in May, 1972 the figure of pending requests jumped to 3032 by the end of that month.[15] As indicated in note 13, *supra,* the pending-requests statistics for the months following May, 1972 have not been provided to the court.

Nevertheless, the department has dealt successfully with fair hearing requests in cases covered by the *Almenares* decision. See page 1134 and note 3 *supra.* That decision undoubtedly triggered the department's effort to increase its staff, so that rapid adjudications could be rendered in fair hearing cases *requiring the continuation of aid during the pendency of the hearing decision.*[16] Indeed, in its "Monthly Fair Hearing Report: May

12. Approximately 15,100 requests were received between January and June, 1972 as compared to approximately 3800 in the same period of 1970. *See* Table 2 and Table 3.

13. The information for the January-June period of 1970 is taken from DHEW Publication No. SRS 72–03257, HEW, "Fair Hearings in Public Assistance, January-June 1970." The publication was submitted to the court in Exhibit A to the state defendant's notice of motion, filed February 1, 1972. The chart referred to in note 10, *supra,* does not contain information as to the total number of hearing requests disposed of and pending in June, 1972. Plaintiffs' Exhibit 198 does contain such information, but only for the period of January-May 1972. That exhibit consists of memoranda, entitled "Monthly Fair Hearing Reports" for the months of January through May,

1972, which were prepared by the New York State Department of Social Services. For this reason, the time periods compared in Table 3 are disparate; however, they clearly demonstrate the trend which is of relevance here.

14. *The source of these statistics is discussed* in note 13, *supra.*

15. *See* Plaintiffs' Exhibit 198, New York State Department of Social Services, "Monthly Fair Hearing Report," (Memorandum), *for* the months of January, April, and May, 1972.

16. *See* note 2 *supra. Almenares* was decided by the Court of Appeals on December 10, 1971. Between January and August of 1972, the state department doubled the number of its hearing officers and hired 28 additional clerical personnel to process fair hearing applications. *See* Table 1 *supra.*

1972," the department announced that its "foremost goal . . . was to issue State fair hearing decisions in 4–6 weeks from the dates agencies sent the notices [of proposed action to effect the suspension, discontinuance or reduction of assistance] in aid-continuing cases." [17]

This policy of rapid disposition of fair hearing decisions has not been extended to the types of cases under consideration in this opinion. The reason for giving priority to the so-called "aid-continuing cases" is, obviously, that delayed decisions in such cases result in increased costs for the state. However, 45 C.F.R. § 205.10(a)(11), the federal prompt-action rule, makes no distinction between aid-continuing cases and other types of cases in which a claimant has the right to a fair hearing. As a practical matter, a claimant whose application for public assistance is denied is as much in need of a rapid decision on his case as was a recipient whose assistance was terminated prior to the *Almenares* decision. Likewise, a claimant who seeks increased assistance from the state has no less an interest in rapid determination of his fair hearing request than a recipient whose aid had been reduced prior to *Almenares.* In fact, the class members in this action are in greater need of expedited fair hearing decisions than welfare recipients who are now protected by the aid-continuation rule of *Almenares* and 18 N.Y.C.R.R. § 358.8. Since the state has been rendering fair hearing decisions within the prescribed 60-day period in aid-continuation cases since May of this year, it is apparent that the May-August figures for untimely decisions in Table 2, *supra,* represent primarily cases within the categories at issue here. Consequently, the percentage

figures for decisions exceeding 60 days to render in non-*Almenares* cases are actually greater than the percentage figures stated in that table. Plaintiffs' Exhibit 200, the accuracy of which has not been contested by defendants, documents the problem for plaintiffs' class.

The exhibit, which is in chart form, sets forth the time element involved in 56 fair hearing cases in which decisions were rendered in excess of 60 days.[18] Sixteen of the cases involve the denial of applications for increased assistance. Twenty-two represent claimants whose initial applications for welfare were denied. Sixteen involve cases where a welfare recipient requested a fair hearing on proposed action by the local agency to terminate, reduce, or suspend assistance, but where aid is not continued under 18 N.Y.C.R.R. § 358.8 because the request was not made within the "advance notice period." [19]

In all but two of the cases on the chart, the claimant's request for a fair hearing was made during the first seven months of this year. In six of the cases, over 200 days elapsed between the date of the hearing request and the date of decision. In 36 other cases, the period exceeded 100 days. As of September 12, 1972, there were 44 cases on the chart where the fair hearing decision was not yet issued.

The court finds that Commissioner Wyman and the New York State Department of Social Services have failed to comply with 45 C.F.R. § 205.-10(a)(11) in a substantial number of fair hearing cases, most probably exceeding 1000 cases, involving members of plaintiffs' class between January and August, 1972.[20]

17. Plaintiffs' Exhibit 198, *supra* note 15, at 1.

18. Fifty-seven cases are included in the chart. However, one case, numbered 17 on the chart, was evidently included by mistake, since the fair hearing decision in that case was issued within 60 days of the request date.

19. The type of case was not indicated with respect to two of the claimants in the chart. For the definition of "advance notice period," see note 2 *supra.*

20. In light of the change in department policy after May, 1972, which eliminated untimely hearing decisions in *Almenares*-type cases, the court infers from Table 2,

In these cases, of course, it has been impossible for Commissioner Sugarman and the New York City Department of Social Services to comply with the decisions within 60 days of the date of the hearing request. In view of the revision of welfare procedures in the state during the past year, the prescriptions in 18 N.Y.C.R.R. § 358.18 and § 358.22, see p. 1138, *supra*, and the lack of evidence of delayed compliance by the city agency with fair hearing decisions in recent months, the court is unable to find that Commissioner Sugarman and the City Department are violating the 60-day rule in cases where timely decisions are issued by state hearing examiners. However, the court does find that these city defendants have misconstrued the meaning of 45 C.F.R. § 205.10(a)(11) in the past and still misconstrue it. See p. 1137 *supra*.

The failure of the New York State Department of Social Services to comply with HEW's 60-day rule has resulted in substantial harm and creates the potential for substantial harm to members of plaintiffs' class. In reponse to the court order imposed in *Almenares*, the state department managed to eliminate untimeliness in the decision of hearing requests covered by that order within a three-month period. The state department has therefore fully demonstrated its ability to comply with the 60-day rule. The court finds and concludes that the state department can successfully bring itself into compliance with the 60-day rule in the categories of cases at issue here in the same rapid manner. From the time this action commenced, the state department has repeatedly advised the court that such compliance would be possible as soon as it completes its present recruitment program for additional staff.

To fully satisfy the 60-day requirement, the state department must also implement procedures to assure that timely fair hearing decisions issued by that department will result in "the mailing of [a] check or increased check, or notification of denial of assistance or increased assistance," within 60 days of the hearing request. (*See* p. 1137, *supra*) It is the state department's responsibility to apprise local social services officials of this federally-imposed duty and to supervise its fulfillment.

Since Commissioner Wyman and the state department have represented to this court their full intention to comply with the 60-day rule and since they are presently in the process of achieving full compliance with it, the court denies permanent injunctive relief as to these defendants at this time. However, the court will retain jurisdiction over this action for a period of 90 days from the date of its order, issued pursuant to these findings and conclusions, to give the state department time to complete its recruitment program and to change any other necessary procedures to insure its full compliance with the 60-day rule in cases covered by this decision.

With respect to Commissioner Sugarman and the New York City Department of Social Services, a permanent injunction is denied.

The court directs the defendant state department to submit a report to the court within 60 days from the date of its order setting forth the steps which have been taken by it to fully comply with 45 C.F.R. § 205.10(a)(11). The report shall specify all relevant changes in the department's regulations and procedures as they affect fair hearing requests in the categories of cases considered in this opinion and the status of the recruitment program.

*supra*, that at least half of the untimely decisions rendered between January and April, 1972 involved cases not within *Almenares* and most probably of the types under consideration in this action. Additional support for this conclusion is found in the HEW publication, cited at note 13,

*supra*. Table 5 of that publication indicates that in the neighboring states of Connecticut and New Jersey well over 50% of the fair hearing requests disposed of between January and June, 1970 related to either "denial of application" or "amount and/or form of payment."